In Re RGH 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-390-CV





IN THE MATTER OF G.R.H.,



 
 APPELLANT


 




FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT



NO. 92-002-J368, HONORABLE BURT CARNES, JUDGE PRESIDING



 




 This is an appeal from an order of the district court of Williamson County, sitting
as a juvenile court, waiving its juvenile jurisdiction over G.R.H., appellant, and transferring him
to district court for criminal proceedings. Tex. Fam. Code Ann. § 54.02 (West 1986 & Supp.
1993).

 Appellant brings three points of error challenging this order. In his first two points
of error, he argues that the juvenile court erred in admitting his written confession into evidence
at the transfer hearing. In his third point of error, appellant complains that the transfer violates
his constitutional rights because, if tried for capital murder, he will not have the benefit of
mitigating evidence at the punishment phase of the trial. We will affirm the order of the juvenile
court.


FACTUAL AND PROCEDURAL BACKGROUND


 On January 10, 1992, appellant and another juvenile, S.R.B., were taken into
police custody in Sealy, Texas, after admitting they had run away from home and had taken,
without permission, a car belonging to S.R.B.'s mother. The Sealy police contacted appellant's
mother in Round Rock and informed her of his whereabouts. When the police attempted to
contact S.R.B.'s mother in Cedar Park, however, they were informed that she had been murdered
and that appellant and S.R.B. were suspects in her murder.

 Appellant was taken before a Sealy magistrate, who read and explained his rights
under section 51.09 of the Family Code. Tex. Fam. Code Ann. § 51.09 (West 1986 & Supp.
1993). The magistrate correctly warned appellant that he could receive a determinate sentence
for a term not to exceed forty years. Family Code § 51.09(c). Approximately nine hours later,
on his arrival in Cedar Park, appellant was given a second set of warnings by a Cedar Park
magistrate. However, the Cedar Park magistrate's warning stated that the determinate sentence
could be for a term not to exceed thirty years. (1) Family Code § 51.09(b)(1)(F). Approximately
three hours later, after a third set of warnings that also referred to a possible thirty-year
determinate sentence, appellant gave a written confession of his participation in the murder to the
Cedar Park magistrate.

 On March 4, 1992, the State filed its "original petition for waiver of jurisdiction
and discretionary transfer to adult criminal court." The petition was based on allegations of
capital murder and, in the alternative, intentional murder. At the hearing on the petition,
appellant's written confession was admitted into evidence over his objection. On June 1, 1992,
the juvenile court signed an order waiving its jurisdiction and ordering appellant transferred to the
district court for further criminal proceedings.


DISCUSSION


 In his first two points of error, appellant complains that the juvenile court erred in
admitting his written confession into evidence at the transfer hearing. In point of error one, he
asserts that the confession was invalid because the warnings of a possible thirty-year sentence
given to him by the Cedar Park magistrate did not comply with the requirements in section
51.09(c) of the Family Code that a juvenile be warned of a possible forty-year sentence. 
Appellant also argues that the inconsistency of the warnings from the Sealy and Cedar Park
magistrates as to the potential determinate sentence confused him and obviated any positive effects
of the warnings. In point of error two, appellant asserts that his confession was not made
knowingly, voluntarily, and intelligently, because he was sixteen years old, had been tested as
"borderline retarded," and had been in custody for seven hours without the presence of or
guidance from a parent or other adult in loco parentis or from an attorney before making his
statement.

 A juvenile court may waive its exclusive original jurisdiction and transfer a child
to a district court for criminal proceedings if it finds that (1) the child is alleged to have committed
a felony, (2) the child was fifteen years of age or older at the time of the offense, (3) no
adjudication hearing has been conducted concerning the offense, (4) there is probable cause to
believe the child committed the offense, and (5) due to the seriousness of the offense or the
background of the child, the welfare of the community requires criminal proceedings. Family
Code § 54.02(a). In making these findings, the court is required to consider the following factors:
(1) whether the alleged offense was against person or property; (2) whether the alleged offense
was committed in an aggressive and premeditated manner; (3) whether there is evidence on which
a grand jury may be expected to return an indictment; (4) the sophistication and maturity of the
child; (5) the record and previous history of the child; and (6) the prospects of adequate protection
of the public and the likelihood for rehabilitation of the child by use of procedures, services, and
facilities currently available to the juvenile court. Family Code § 54.02(f). Appellant asserts that
his confession was a significant factor in the court's determination that there was probable cause
that he committed the offense. He also asserts that the confession formed the evidentiary
foundation for the juvenile court's findings that the offense was premeditated and that there was
a likelihood the grand jury would indict him.

 Even if the juvenile court erred in admitting appellant's confession into evidence,
other evidence presented to the court demonstrated probable cause that appellant committed the
offense, that the murder was premeditated, and that it was likely a grand jury would indict
appellant. Therefore, because we conclude that any error in its admission was harmless, we will assume, without deciding, that the confession was improperly admitted into evidence. Tex. R.
App. P. 81(b)(1). (2)

 At the transfer hearing, the report of a psychiatrist who examined appellant was
introduced into evidence. (3) Included in this report was appellant's description of the planning and
commission of the murder, given to the psychiatrist in even more detail than appeared in
appellant's prior written confession. For instance, appellant explained to the psychiatrist that he
and S.R.B. planned the murder on Thursday. According to the plan, the murder would take place
when the deceased would have money. In discussing the commission of the murder, appellant
explained that when the deceased arrived home from work, appellant hid in nearby woods. 
Shortly thereafter, when the deceased took a nap, S.R.B. came to the woods and invited appellant
back into the house. Once back inside the house, both appellant and S.R.B. jumped on the
deceased, attempting to choke and smother her. Appellant related to the psychiatrist that he
stabbed the deceased multiple times: "I stabbed her in the neck, then the hand. Her mother rolled
over, then I stabbed her in the back. Then I dropped the knife. Her mother got it. She almost
stabbed me." Appellant got the knife back and stabbed the deceased again in the chest. He then
discovered he had wounded himself on one arm. Finally, appellant described leaving the scene: 
"Then [S.R.B.] kissed me and said she loved me. Then I heard real loud breathing. I had blood
on my arms and hands. I washed my hands. I went back in--there was no breathing. I checked
her pulse. [S.R.B.] was putting clothes in a box. We drove off in the car."

 The foregoing evidence was not all, however. A probation officer also testified,
based on his review of evidence in the case, about the planning and commission of the murder by
appellant and S.R.B. (4) The probation officer testified that S.R.B. approached appellant with an invitation to help murder her mother; although they initially agreed to commit the murder the
next day, circumstances changed and they decided to do it that day. Appellant hid in the woods
and S.R.B. came and got him when the deceased was napping. The probation officer further
testified that, once in the house, appellant removed a pillow from the couch and attempted to
choke and smother the deceased. When this did not appear to be working, S.R.B. went to the
kitchen and returned with a knife. S.R.B. handed the knife to appellant, who began stabbing the
deceased.

 Also introduced into evidence was the probation officer's written report detailing
appellant's background and the circumstances of the offense. Included in this report was a
statement taken from S.R.B.'s confession to the magistrate stating, "[S]he was still breathing just
a little, then I said `go stab her some more', so [G.R.H.] did, and then she wasn't breathing, so
I said `let's get out of here'." The report also described eyewitness accounts of appellant and
S.R.B. hurriedly leaving the murder scene around the time the murder was committed. 
Furthermore, the report stated that the results of forensic laboratory tests showed that appellant's
blood was found at the murder scene and that blood of the deceased was found on appellant's
jeans and friendship bracelet. Finally, the report noted that when appellant and S.R.B. were taken
into custody in Sealy, they were in possession of a car and a purse belonging to the deceased.

 When this last report was offered into evidence, appellant's attorney objected, in
part, "[A]s to any mention of or consideration of the alleged confessions made in this case, I
object to those portions." This objection was overruled by the juvenile court. (5) Although appellant
does not specifically complain of this ruling on appeal, he complains in his brief that his
confession was a "major factor" in the certification process in that it was relied on by the
probation officer in preparing his report. Any error presented by appellant as to the admission
of the probation officer's report has been waived. "A general objection to a unit of evidence as
a whole . . . which does not point out specifically the portion objected to, is properly overruled
if any part of it is admissible." Speier v. Webster College, 616 S.W.2d 617, 619 (Tex. 1981). 
Appellant's objection was general because it did not point out specifically any statement in the
report that was inadmissible. In fact, appellant admitted at trial that other portions of the report
were admissible. In any event, the portions of the report cited above do not refer to information
found in appellant's original confession to the Cedar Park magistrate.

 Thus, even if appellant's confession was improperly admitted into evidence, we
conclude that the strength of other evidence in the record prevents us from determining that the
admission of the confession was reasonably calculated to cause and probably did cause rendition
of an improper order. Tex. R. App. P. 81(b)(1). Accordingly, any error in its admission was
harmless. Appellant's first two points of error are overruled.

 In his third point of error, appellant complains that the juvenile court erred in
certifying him to stand trial as an adult for capital murder because, under the Texas statutory
framework, he will not have the benefit of mitigating evidence at trial. Appellant claims that he
should be allowed to introduce mitigating evidence at the penalty phase of his trial and thus
receive individualized sentencing. Without the opportunity to mitigate his punishment, appellant
asserts, his rights under the Fourteenth and Eighth Amendments, as well as his rights to due
process and equal protection of the law, will be violated.

 Under section 12.31 of the Penal Code, an individual convicted of a capital felony
may be sentenced either to death or to life imprisonment. Tex. Penal Code Ann. § 12.31(a) (West
Supp. 1993). However, section 8.07(d) of the Penal Code provides that no person may be
punished by death for an offense committed while he was younger than seventeen years of age. 
Tex. Penal Code Ann. § 8.07(d) (West Supp. 1993). Therefore, persons convicted of committing
a capital offense while they were younger than seventeen years of age must be sentenced to life
imprisonment. Allen v. State, 552 S.W.2d 843, 845 (Tex. Crim. App. 1977). Appellant was
sixteen years of age at the time of the alleged offense.

 Appellant's complaint is premature. The order of the juvenile court merely
transferred appellant to district court for further criminal proceedings as to a charge of capital
murder or, in the alternative, intentional murder. Appellant has not been indicted, tried, or
convicted of capital murder. Therefore, there has been no violation of his constitutional rights
as a result of the transfer order.

 Moreover, even assuming appellant is convicted of capital murder, the Texas Court
of Criminal Appeals has held that jury sentencing is not necessary for a person convicted of
committing a capital offense while younger than seventeen years of age because life imprisonment
is the only punishment that may be assessed. Allen, 552 S.W.2d at 846. The fact that a judge
must automatically impose a life sentence is not a denial of appellant's rights to due process and
equal protection. Cammon v. State, 672 S.W.2d 845, 851 (Tex. App.Corpus Christi 1984, no
writ). It is also not a violation of his rights under the Eighth Amendment. Harmelin v. Michigan,
111 S.Ct. 2680, 2702 (1991) (refusing to require individualized sentencing in non-capital cases). 
We overrule appellant's third point of error.


CONCLUSION


 The order of the juvenile court is affirmed.



 

 J. Woodfin Jones, Justice

Before Justices Powers, Jones, and Kidd

Affirmed

Filed: October 6, 1993

Do Not Publish
1. The legislature amended section 51.09(c), effective September 1, 1991, to provide that,
in addition to the warnings a child receives under section 51.09(b)(1), a child must be warned
that he could receive a forty-year determinate sentence. See also Tex. Fam. Code Ann
§ 54.04(d)(3) (West Supp. 1993) (increasing maximum determinate sentence from thirty to
forty years). However, the language in section 51.09(b) referring to a warning of thirty years
was not deleted.
2. Appeals from orders of juvenile courts are governed by procedures for the appeal of
civil cases. See Tex. Fam. Code Ann. § 56.01(a) (West Supp. 1993).
3. The only objection to this report was on the basis that the psychiatrist had not fully
informed appellant of his rights. This objection was overruled by the juvenile court, and
appellant does not complain of this ruling.
4. A hearsay objection to his testimony as a whole was made only after he had described
the planning and commission of the murder. The juvenile court sustained the ruling, but only
as to the statement the probation officer was about to make. Appellant does not complain of
this ruling on appeal.
5. Appellant also objected "to the personal opinions and the recommendations that are
obviously personal from [the probation officer] and not apparently based on investigative
facts." The juvenile court sustained this objection and did not admit a portion of the report.